BEFORE THE THIRD DIVISION, APRIL 26, 1950

**No. 54273.**—Geo. S. Bush & Co., Inc. v. United States, petition 6668–R (Seattle).

EKWALL, Judge: This is a petition for remission of additional duties which were assessed under the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) because of undervaluation of certain snuff bottles.

Before proceeding to a decision on the merits, we will consider a motion to dismiss the petition on the part of the Government on the ground that the name of the petitioner as it appears thereon is not sufficiently specific. The attorney for the petitioner, Mr. John P. Hausman, filed and signed the petition in his own name. In the box heading the petition the name of the broker, Geo. S. Bush & Co., Inc., is given. It is contended on the part of the Government that the

said Geo. S. Bush & Co., Inc., would not be a proper party to file the petition for the reason that an owner's declaration was filed in connection with the entry and, therefore, the broker has been absolved from the payment of these additional duties. The name of the consignee, H. Sooysmith, does not appear as petitioner.

The record discloses that Mr. John P. Hausman is president of Geo. S. Bush & Co., Inc., the customs broker in this case, and that he prepared the entry papers which were filed under his instructions. Mr. Hausman is also an attorney of this court and the presumption is that he signed the petition by authority of the party in interest. See *Yee Chong Lung & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 382, T. D. 39191. It has been held that a customs broker may file a petition for remission in his own name, and in doing so he is acting as agent of the owner. See *E. H. Corrigan* v. *United States*, 35 C. C. P. A. (Customs) 10, C. A. D. 364; *Hensel, Bruckmann & Lorbacher (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 498, T. D. 41377; *Frederick Richards* v. *United States*, 24 C. C. P. A. (Customs) 243, T. D. 48670. Under authority of the cases cited, we find that the petition is sufficient and deny the motion to dismiss.

On the merits, the record discloses that the merchandise here involved was imported from China by parcel post and consisted of snuff bottles and similar goods, not staple articles of commerce, a portion of which was entered free of duty as artistic antiquities and others dutiable at various rates under appropriate provisions of the tariff act.

From the testimony of Mr. Hausman it appears that the owner of the merchandise, Mr. H. Sooysmith, is a client of his firm; that said Sooysmith is an importer of Chinese snuff bottles and has made several importations of the same. Mr. Hausman was in charge of the preparation and filing of the entry. Prior to entry, he had received from Mr. Sooysmith the invoice, together with a letter of instructions, and an accompanying letter from the shipper, Dunt King. All of these documents were submitted by Mr. Hausman to the customs examiner. The testimony of the examiner was to the effect that he had been handed all of these papers by Mr. Hausman but that he (the examiner) did not peruse the papers at that time, apparently because the documents were not connected with any importation then before him. He stated that his understanding of the broker's purpose in presenting this entry to him was:

There was a typical letter from Mr. Sooysmith attached. Mr. Hausman, I think, was trying to be helpful to me in giving me whatever Mr. Sooysmith knows about the antiquity of it. Sometimes after reading four or five pages, he will get something about value, and that is my idea of the purpose.

In a postscript on a separate piece of paper to the letter sent by the shipper, Dunt King, there appears the following:

Please note that our assistant had enclosed in the parcel a "local Invoice" which should not be forwarded to you owing to the different arrangement of the detailed prices. But the total is US$510, same as consular invoice. This is very important, please tell your forwarding company that the invoice which is enclosed in the parcel should be destroyed, and not to show your customs.

The owner of the merchandise, Mr. Sooysmith, testified that he mailed the invoice, together with the accompanying papers, to Mr. Hausman, the customs broker, with instructions to turn all papers over to the customs; he did not follow the instructions of the shipper because he understood that they were in violation of customs laws and he wished to have the customs officials familar with all the details of the transaction. This witness has been importing Chinese art goods for 20 years and had previously purchased merchandise similar to the goods involved in this importation from Dunt King. About a year and a half prior to this shipment, he decided to have this shipper send him pictures, price lists, and descriptions of articles before he made his purchases. When such information

was sent to him, he found that a number of the snuff bottles was high priced. After receiving another lot of pictures, he wrote the shipper complaining about the high price of the first lot and received a reply that he would be given a discount of 10 percent. As to the second lot, he was informed by telegram and letter that due to the change in foreign exchange, the shipper would grant him a 30 percent reduction. Upon receipt of the consular invoice, he checked same and found it tallied with the price list, by making allowance for the two reductions. He did not send the photographs and price lists to his customs broker, nor did he communicate with the customs officers prior to entry. He made no independent investigation as to the market value of these articles because he was familiar with such merchandise, having imported and sold a great deal of it. He stated that an importer in handling this type of articles, snuff bottles, and in selling them, is supposed to be familiar with the prices in the various parts of China, and that he corresponded with no one but his dealer in China. He further stated that it was utterly impossible to make an investigation as to the prices of these bottles at the time they were shipped.

Neither the customs broker nor the owner saw the so-called "local invoice." In this connection, Mr. Hausman, when recalled, testified:

* * * my testimony, yes, did not bring out clearly the reason that I didn't give significance to the so-called private invoice. It is also called local invoice, and I think it is exhibit Number 4 of the document; and the reason I did not give significance to that invoice was because I placed little credence in it. I had never seen it, I didn't know what it was, and the importer had never seen it. The testimony shows that it was in the package which had not been opened for examination. So I didn't place any credence, I knew there was an invoice in there, but I also believed thoroughly that the consular invoice recited the true values of the goods for [sic] which the importer had ordered and which the importer had paid for. So that I would like to stress the fact that there was no particular object in my paying attention to that so-called private invoice, because I didn't think it had any bearing on the entered value of the merchandise.

Mr. Hausman also testified that he did not submit the letters, exhibit 2 and collective exhibit 3, to anyone in the customhouse or to the appraiser because it is not the custom to submit them to anyone but the examiner; that the reason he made no written application to the appraising officer was because of the frequent importations made by this importer and the fact that the classification of the articles could not be arrived at except by examination thereof; that it was impossible to arrive at the proper unit value until the articles were inspected and he did not inspect them prior to entry because he was not permitted to do so.

From this record we find that both the importer and the customs broker acted in good faith in entering the merchandise. The owner gave all the information that he had as to the value of the articles to his customs broker. The customs broker showed the entire file of papers to the examiner when he requested information as to values. Neither the customs broker nor the importer ever saw the so-called "local invoice." The appraiser testified that he considered that the customs broker in presenting the letter from the importer was "trying to be helpful to me in giving me whatever Mr. Sooysmith knows about the antiquity" of the articles. The customs broker has had 54 years' experience in the customs brokerage business; in making entry in this case he followed his usual custom; he has been filing entries for this importer for a number of years, including many entries of snuff bottles; and during his previous experience with him there had been no advance in value on any of his merchandise.

In regard to the price lists which were the subject of considerable discussion at the hearings, the record shows that these price lists were in effect at a time approximately 3 months prior to the date of exportation and that during the interim the importer had received information from the shipper that he, the importer, was

entitled to a reduction from the list prices, or the agreed prices, because of the devaluation of the currency of the invoice. This reduction is what is described in the record rather loosely as a "discount." The fact that these price lists, which were issued at an earlier date, may have shown prices higher than those on the consular invoice, which were the ones used in making entry, is immaterial, for the reason that they were issued prior to the date of the devaluation of the currency. That neither the importer nor the customs broker disclosed such prices to the customs officials prior to entry is not evidence of bad faith, but rather evidence that they were considered immaterial as evidence of the prices prevailing at the time of exportation.

Upon a careful consideration of the record we find that the petitioner has shown good faith; that there were no facts known to it which would cause a prudent man to question the correctness of the entered values; and that petitioner made a full disclosure of all material facts in its possession to the customs officials. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41; *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70; *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. 29, C. A. D. 392.

The petition is therefore granted.

OPINION CONCURRING IN PART

CLINE, Judge: I am in agreement with my associates that the petition herein is sufficient and that the motion to dismiss should be denied.

After careful consideration of the record, however, I believe the petition should be denied.

The salient facts adduced from the record herein are that a "local invoice" showing values somewhat different from those in the consular invoice was placed in the package; that the importer never saw it but was advised by the shipper that it was in the package; that the letter in regard to this invoice was handed to the examiner prior to entry, but his attention was not called to it and he did not read it; that no written request for information as to value was made of the examiner; that the importer had received price lists from the shipper prior to entry but these were not shown to customs officials; that the importer was given discounts from these price lists, but no mention of this was made at the time of entry; that the importer made no investigation of the market in China, stating that it was impossible to do so; and that the Shanghai market was higher than that in any other part of China.

It has been held that in order to obtain relief the petitioner must show that he was acting in entire good faith; that there were no facts known to him which would cause a prudent man to question the correctness of the values given by him; that he had made a full disclosure of all material facts in his possession to customs officials. *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453; *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. 356, C. A. D. 41; *R. W. Gresham* v. *United States*, 27 C. C. P. A. 106, C. A. D. 70; *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. 29, C. A. D. 392.

In the instant case the importer (Mr. Sooysmith) did not disclose to customs officials at the time of entry that he had certain price lists in his possession and that he was receiving certain discounts. Although the price lists were issued some time prior to importation, there is no evidence that they themselves were ever changed. On the contrary, Mr. Sooysmith testified:

\* \* \* I wrote the shipper complaining about the high price of the first bottles, and got a letter from him stating that he would give *me* a 10 per cent reduction on whatever bottles I purchased from the first lot of pictures. On the

second lot of pictures, I selected a certain number of bottles, and I got a telegram about a month, or rather a few weeks after he received my letter, stating that foreign exchange had gone down, and he would give *me* a 30 per cent reduction from the price list of this lot of bottles.  *  *  *  [Emphasis supplied.]

Furthermore, Mr. Sooysmith admitted that he made no investigation of the market value of the articles.   The knowledge that he was receiving discounts and that an invoice showing values different from those in the consular invoice was contained in the package should have caused a prudent man to question his values and make a sincere effort to check them.   Here, the importer did not disclose all the facts to customs officials nor did the broker make any request for information as to value.

Under these circumstances, it cannot be held that the petitioner has sustained the burden of proving that in making the entry such good faith was exercised as is required by the statute.   The petition should be denied.